# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 20-1357V
UNPUBLISHED

| | |
|---|---|
| PAMELA DEZURIK,<br><br>       Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>       Respondent. | Chief Special Master Corcoran<br><br>Filed: September 6, 2022<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza (Flu)<br>Vaccine; Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*Maximillian J. Muller*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Voris Edward Johnson*, U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION AWARDING DAMAGES[1]

On October 9, 2020, Pamela Dezurik filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged the Table claim that she suffered a shoulder injury related to vaccine administration ("SIRVA") after receiving the influenza vaccine on October 18, 2018. Petition at 1, ¶¶ 2, 20. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU"). Although a ruling on entitlement in Petitioner's favor was issued in January 2022, the parties have been unable to resolve damages on their own.

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons described below, I find that Petitioner is entitled to an award of damages in the amount **$111,797.01**, **representing $105,000.00 for actual pain and suffering, plus $6,797.01 for actual unreimbursed expenses.**

## I.   Relevant Procedural History

Along with her petition, Ms. Dezurik filed the medical records and affidavit required under the Vaccine Act. Exhibits 1-4; *see* Section 11(c). On October 21, 2020, the case was activated and assigned to the SPU (OSM's adjudicatory system for attempting to resolve cases deemed likely to settle). ECF No. 8.

On January 4, 2022, Respondent filed his Rule 4(c) Report conceding Petitioner was entitled to compensation, and I issued a Ruling on Entitlement approximately two weeks later. ECF Nos. 19, 21. For approximately two months thereafter, the parties attempted to informally resolve the issue of damages. *See, e.g.*, Status Report, filed Feb. 18, 2022, ECF No. 22. On March 21, 2022, they informed me they had reached an impasse in their damages discussions. ECF No. 24.

In May 2022, Petitioner filed her supplemental affidavit, and the parties filed their damages briefs. Exhibit 5, filed May 5, 2022, ECF No. 25; Petitioner's Brief in Support of Damages ("Brief"), filed May 27, 2022, ECF No. 27; Respondent's Brief Regarding Damages ("Opp."), filed May 27, 2022, ECF No. 28. Both filed responsive damages briefs on June 10, 2022. Petitioner's Reply Brief in Support of Damages ("Pet. Reply"), ECF No. 30; Respondent's Response to Petitioner's Damages Brief (Res. Reply"), ECF No. 31. The matter is now ripe for adjudication.

## II.   Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[3] *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. In *Graves*, Judge Merow rejected a special master's approach of awarding compensation for pain and suffering based on a spectrum from $0.00 to the statutory $250,000.00 cap. *Graves v. Sec'y of Health & Hum. Servs.,* 109 Fed. Cl. 579 (Fed. Cl. 2013). Judge Merow maintained that do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 590. Instead, Judge Merow assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id*. at 595. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap.

---

[3] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

### III.     Prior SIRVA Compensation Within SPU[4]

#### A.     Data Regarding Compensation in SPU SIRVA Cases

SIRVA cases have an extensive history of informal resolution within the SPU. As of July 1, 2022, 2,723 SPU SIRVA cases have resolved since the inception of SPU on July 1, 2014. Compensation was awarded in 2,651 of these cases, with the remaining 72 cases dismissed.

Of the compensated cases, 1,513 SPU SIRVA cases involved a prior ruling that petitioner was entitled to compensation. In only 114 of these cases was the amount of damages determined by a special master in a reasoned decision. As I have previously stated, the written decisions setting forth such determinations, prepared by neutral judicial officers (the special masters themselves), provide the most reliable precedent setting forth what similarly-situated claimants should also receive.[5]

1,371 of this subset of post-entitlement determination, compensation-awarding cases, were the product of informal settlement - cases via proffer and 28 cases via stipulation. Although all proposed amounts denote an agreement reached by the parties, those presented by stipulation derive more from compromise than any formal agreement or acknowledgment by Respondent that the settlement sum itself is a fair measure of damages. Of course, even though *any* such informally-resolved case must still be approved by a special master, these determinations do not provide the same judicial guidance or insight obtained from a reasoned decision. But given the aggregate number of such cases, these determinations nevertheless "provide *some* evidence of the kinds of awards received overall in comparable cases." *Sakovits v. Sec'y of Health & Hum. Servs.*, No. 17-1028V, 2020 WL 3729420, at *4 (Fed. Cl. Spec. Mstr. June 4, 2020) (emphasis in original).

The remaining 1,138 compensated SIRVA cases were resolved via stipulated agreement of the parties without a prior ruling on entitlement. These agreements are often described as "litigative risk" settlements, and thus represent a reduced percentage of the compensation which otherwise would be awarded. Due to the complexity of these settlement discussions, many which involve multiple competing factors, these awards do

---

[4] All figures included in this decision are derived from a review of the decisions awarding compensation within the SPU. All decisions reviewed are, or will be, available publicly. All figures and calculations cited are approximate.

[5] *See, e.g., Sakovits v. Sec'y of Health & Hum. Servs.*, No. 17-1028V, 2020 WL 3729420, at *4 (Fed. Cl. Spec. Mstr. June 4, 2020) (discussing the difference between cases in which damages are agreed upon by the parties and cases in which damages are determined by a special master).

not constitute a reliable gauge of the appropriate amount of compensation to be awarded in other SPU SIRVA cases.

The data for all groups described above reflect the expected differences in outcome, summarized as follows:

|  | **Damages Decisions by Special Master** | **Proffered Damages** | **Stipulated Damages** | **Stipulated[6] Agreement** |
|---|---|---|---|---|
| **Total Cases** | *114* | *1,371* | *28* | *1,138* |
| **Lowest** | $40,757.91 | $25,000.00 | $45,000.00 | $5,000.00 |
| **1st Quartile** | $72,354.81 | $67,472.00 | $90,000.00 | $40,000.00 |
| **Median** | **$102,479.12** | **$86,927.85** | **$122,886.42** | **$60,000.00** |
| **3rd Quartile** | $125,343.45 | $115,000.00 | $161,001.79 | $115,000.00 |
| **Largest** | $265,034.87 | $1,845,047.00 | $1,500,000.00 | $550,000.00 |

### B. Pain and Suffering Awards in Reasoned Decisions

In the 114 SPU SIRVA cases which required a reasoned damages decision, compensation for a petitioner's actual or past pain and suffering varied from $40,000.00 to $210,000.00, with $100,000.00 as the median amount. Only five of these cases involved an award for future pain and suffering, with yearly awards ranging from $250.00 to $1,500.00.[7]

In cases with lower awards for past pain and suffering, many petitioners commonly demonstrated only mild to moderate levels of pain throughout their injury course. This lack of significant pain is often evidenced by a delay in seeking treatment – over six months in one case. In cases with more significant initial pain, petitioners usually experienced this greater pain for three months or less. Most petitioners displayed only mild to moderate limitations in range of motion ("ROM"), and MRI imaging showed evidence of mild to moderate pathologies such as tendinosis, bursitis, or edema. Many petitioners suffered from unrelated conditions to which a portion of their pain and suffering could be attributed. These SIRVAs usually resolved after one to two cortisone injections and two months or less of physical therapy ("PT"). Only one required surgery. Except in one case with an award for pain and suffering slightly below the median amount, the duration of the SIRVA injury ranged from six to 30 months, with most petitioners averaging

---

[6] Two awards were for an annuity only, the exact amounts which were not determined at the time of judgment.

[7] Additionally, a first-year future pain and suffering award of $10,000.00 was made in one case. *Dhanoa v. Sec'y of Health & Hum. Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018).

approximately nine months of pain. Although some petitioners asserted residual pain, the prognosis in these cases was positive. Only one petitioner provided evidence of an ongoing SIRVA, and it was expected to resolve within the subsequent year.

Cases with higher awards for past pain and suffering involved petitioners who suffered more significant levels of pain and SIRVAs of longer duration. Most of these petitioners subjectively rated their pain within the upper half of a ten-point pain scale and sought treatment of their SIRVAs more immediately, often within 30 days of vaccination. All experienced moderate to severe limitations in range of motion. MRI imaging showed more significant findings, with the majority showing evidence of partial tearing. Surgery or significant conservative treatment, up to 133 PT sessions, a PT duration of more than three years, and multiple cortisone injections, were required in these cases. In four cases, petitioners provided sufficient evidence of permanent injuries to warrant yearly compensation for future or projected pain and suffering.

### IV.     Appropriate Compensation for Petitioner's Pain and Suffering

The parties agree Petitioner should be awarded $6,797.01 for past unreimbursed expenses. Brief at 1, 9; Opp. at 1 n.1. Thus, the only area of disagreement is the amount of compensation which should be awarded for Petitioner's pain and suffering. Petitioner seeks $120,000.00 for her pain and suffering, and Respondent argues for an award of $85,000.00. Brief at 1, 9; Opp. at 2, 9.

The parties' disagreement appears to be based upon their differing views of the weight to be given Petitioner's symptoms and treatment, rather than any significant disagreement regarding the facts and circumstances of the case. Both acknowledged Petitioner suffered a SIRVA injury which involved initially moderate to severe pain levels; required treatment consisting of 14 PT sessions (4 of which were attended prior to surgery), a cortisone injection, and arthroscopic surgery, with the injury substantially resolved within six and one-half to seven months post-vaccination. Brief at 7-8; Opp. at 7-8. However, they offer very different comparable cases to support their damages positions.

Petitioner favorably compared the facts and circumstances of her SIRVA injury with those suffered by the petitioners in *Vaccaro, Moore,* and *Collado*, who received pain and suffering awards ranging from $110,000.00 to $120,000.00, respectively.[8] Brief at 6-7. All cases involved petitioners who underwent arthroscopic surgery. *Vaccaro,* 2022 WL

---

[8] *Vaccaro v. Sec'y of Health & Hum. Servs.,* No. 19-1883V, 2022 WL 662550 (Fed. Cl. Spec. Mstr. Feb. 2, 2022); *Moore v. Sec'y of Health & Hum. Servs.,* No. 19-1850V, 2022 WL 962524 (Fed. Cl. Spec. Mstr. Feb. 25, 2022); *Collado v. Sec'y of Health & Hum. Servs.,* No. 17-0225V, 2018 WL 3433352 (Fed. Cl. Spec. Mstr. June 6, 2018).

662550, at *4-5; *Moore,* 2022 WL 962524, at *3; *Collado,* 2018 WL 3433352, at *3, 7-8. In contrast, Respondent initially proposed nine comparable cases, only two of which involved petitioners who underwent arthroscopic surgery, *Shelton* and *Hayes,* in which petitioners were awarded $97,500.00 and $120,000.00, respectively.[9] Opp. at 8-9.

In her responsive brief, Petitioner criticized the utility of non-surgical cases as comparables. Pet. Brief at 1. She argued that the *Shelton* case is clearly distinguishable, but agreed that *Hayes* involved pain and suffering which is comparable to what Petitioner endured. *Id.* at 2-3. She noted that "Respondent cites cases with pain and suffering awards ranging from $97,500.00 and $120,000.00, yet inexplicably requests an $85,000.00 proffer, which he deems 'reasonable, fair, and appropriate compensation in this case.'" *Id.* at 3-4.

In his responsive brief, Respondent criticized what he characterized as Petitioner's suggestion "that there should be a presumption that every SIRVA case involving a surgery entitles the petitioner to a pain and suffering award of $100,000.00 or more." Res. Brief at 1. He insisted that he was countering this assertion by offering some non-surgical cases. Maintaining that "the clinical courses experienced by the petitioners in those cases were comparable to what petitioner here experienced, but-for her surgery," he reiterated his belief that a pain of suffering award of $85,000.00 is appropriate in this case. *Id.* at 2.

I agree as a general matter that an award of at least $100,000.00 is not automatically appropriate for all SIRVA injuries, simply because arthroscopic surgery was involved. In fact, I have awarded less than this amount in several cases. *See,* e.g., *Shelton,* 2021 WL 2550093, at *1, 9; *Hunt v. Sec'y of Health & Hum. Servs.*, No. 19-1003V, 2022 WL 2826662, at *1, 10 (Fed. Cl. Spec. Mstr. June 16, 2022). However, the fact that a petitioner resorted to arthroscopic surgery to alleviate her symptoms inherently reflects a greater level of pain and suffering. In addition, Program goals are generally served by creation of a few foundational rubrics that can be considered when faced with a dispute about pain and suffering – a common disagreement that too often obstructs the speedy resolution of too many SIRVA cases. Thus, it is not unreasonable to apply a baseline six-figure "yardstick" to SIRVA pain and suffering demands in cases involving

---

[9] *Shelton v. Sec'y of Health & Hum. Servs.,* No. 19-0279V, 2021 WL 2550093 (Fed. Cl. Spec. Mstr. May 21, 2021); *Hayes v. Sec'y of Health & Hum. Servs.,* No. 17-0804V, 2021 WL 688628 (Fed. Cl. Spec. Mstr. Jan. 6, 2021). The remaining seven non-surgical cases are as follows: *Norton v. Sec'y of Health & Hum. Servs.,* No. 19-1432, 2021 WL 4805231 (Fed. Cl. Spec. Mstr. Sept. 14, 2021); *Rayborn v. Sec'y of Health & Hum. Servs.,* No. 18-0226V, 2020 WL 5522948 (Fed. Cl. Spec. Mstr. Aug. 14, 2020); *Horton v. Sec'y of Health & Hum. Servs.,* No. 20-1166V, 2022 WL 1421847 (Fed. Cl. Spec. Mstr. Mar. 25, 2022); *Johnson v. Sec'y of Health & Hum. Servs.,* No. 18-1486V, 2021 WL 836891 (Fed. Cl. Spec. Mstr. Jan. 25, 2021); *McCabe v. Sec'y of Health & Hum. Servs.,* No. 19-1916V, 2021 WL 6755494 (Fed. Cl. Spec. Mstr. Dec. 29, 2021); *Walker v. Sec'y of Health & Hum. Servs.,* No. 19-0919V, 2021 WL 6425322 (Fed. Cl. Spec. Mstr. Dec. 7, 2021); *Smith v. Sec'y of Health & Hum. Servs.,* No. 19-0745V, 2021 WL 2652688 (Fed. Cl. Spec. Mstr. May 28, 2021).

surgery (although one that can be rebutted) – and it is for all these reasons that the best comparables under the circumstances are those involving surgery.

Here, the comparables offered are not all of equal utility. Although a surgical case, *Shelton* involves a unique set of facts and circumstances, including an initial delay of five months before any complaint of pain and an additional three-month delay before further treatment was pursued. *Shelton,* 2021 WL 2550093, at *7. Thus, it does not provide helpful guidance in this case (or most other cases for that matter).

The remaining surgical cases proposed by the parties involves pain and suffering awards ranging from $110,000.00 to $120,000.00 and thus, are closer to the amount proposed by Petitioner - $120,000.00. However, the *Vaccaro* and *Collado* petitioners suffered more demonstrated intensive pain both prior to and after surgery. *Vaccaro,* 2022 WL 662550, at *5; *Collado,* 2018 WL 3433352, at *6-7. And the *Vaccaro* petitioner attended twice the amount of PT. *Vaccaro,* 2022 WL 662550, at *5. The overall duration of the SIRVA injury suffered by the *Moore* and *Hayes* petitioners was much longer – more than twice the length of Petitioner's injury. *Moore,* 2022 WL 962524, at *3; *Hayes,* 2021 WL 688628, at *3. The *Hayes* petitioner suffered symptoms for three years before deciding to undergo arthroscopic surgery. *Hayes,* 2021 WL 688628, at *3.

Instead, I find the facts and circumstances suffered by Petitioner most closely mirrors those suffered by the petitioner in *Cates*, who received a pain and suffering award of $108,000.00. *Cates v. Sec'y of Health & Hum. Servs.,* No. 18-0277V, 2020 WL 3751072 (Fed. Cl. Spec. Mstr. June 5, 2020). The *Cates* petitioner's SIRVA injury also lasted approximately seven months, involved more severe levels of initial pain, and required a cortisone injection, similar amounts of PT, and arthroscopic surgery performed a few months post-vaccination. *Cates,* 2020 WL 3751072, at *3-4. However, the *Cates* petitioner's severe pain levels lasted a few months longer than Petitioner's.

Thus, Petitioner's pain and suffering award should be slightly lower than what was awarded the *Cates* petitioner. I find that a pain and suffering award of $105,000.00 is appropriate in this case.

### V.     Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $105,00.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[10] I also find that Petitioner is entitled to $6,797.01 in actual expenses.**

---

[10] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-

Based on the record as a whole and arguments of the parties, **I award a lump sum payment of $111,797.01, representing compensation in the amounts of $105,000.00 for her actual pain and suffering and $6,797.01 for her actual unreimbursable expenses in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[11]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[11] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.